In the
**UNITED STATES DISTRICT COURT**
for the **SOUTHERN DISTRICT OF INDIANA**,
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **ROBERT CRAIN**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 1:06-cv-1152-SEB-TAB |
| ) | |
| **BOB EVANS FARMS, INC.**, ) | |
| ) | |
| Defendant. ) | |

## **E N T R Y**

**Defendant's Motion for Summary Judgment (doc. 39)**

In August of 2005, while driving to his job at one of Bob Evans Farms' restaurants, Robert Crain sustained injuries in a car accident that required the amputation of his right leg above the knee and confined him to a wheelchair. In mid-October of 2005, after a two-month medical leave of absence, he inquired about returning to work at Bob Evans. Bob Evans's Indianapolis-area director met with Mr. Crain to discuss possible jobs that he could perform at the restaurant. A short time later, Bob Evans informed Mr. Crain that it had no positions available for him at the restaurant but offered to place him on a one-year medical leave while he had a planned prosthetic leg fitted and underwent therapy to learn to use it,[1] and then he could return to Bob Evans for review of the employment possibilities at that time. Mr. Crain accepted that offer and was placed on medical leave. The next month, on November 18, 2005, Mr. Crain filed a charge against Bob Evans with the Equal Employment Opportunity Commission, alleging

---

[1] An extended medical leave was necessary because Mr. Crain's medical professionals desired him to lose substantial weight before being fitted with the prosthetic leg. There is a suggestion in the record that Mr. Crain has not transitioned successfully to a prosthetic leg.

1

disability discrimination.  The charge was dismissed without findings in April, 2006 and Mr. Crain filed the present suit in July, 2006.  He had no communication with Bob Evans after being placed on the year-long medical leave and did not return at the end of that leave to inquire about assignment to a position.  After not hearing from him at the end of his leave, Bob Evans terminated his employment on August 4, 2006.

Mr. Crain's complaint claims that Bob Evans violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, and its implementing regulations, 29 C.F.R. Part 1630.  Count I claims that Bob Evans refused to reasonably accommodate Mr. Crain's disability, Count II claims that Bob Evans refused to engage in the required interactive process, and Count III claims that Bob Evans's failure to engage in the interactive process constitutes bad faith.  Because there is no independent cause of action for an employer's failure to engage in the interactive process, *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001) ("the failure to engage in the interactive process by itself does not give rise to relief"); *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1023 (7th Cir. 1997) ("The interactive process the ADA foresees is not an end in itself . . . ."), summary judgment is granted as to Counts II and III.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Although all reasonable inferences from the evidence shall be drawn in favor of the non-moving party, the non-moving party cannot rest upon his pleadings but must demonstrate a genuine issue of material fact by presentation of specific evidence.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The ADA prohibits covered entities from discriminating against a qualified individual with a disability because of the disability in regard to, *inter alia*, hiring, discharge, compensation, and other terms and conditions of employment.  42 U.S.C. § 12112(a).  A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  Unlawful discrimination includes "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A).  Regulations implementing the ADA provide that, "[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  29 C.F.R. § 1630.2(o)(3).  There is no dispute in this case that Bob Evans is a "covered entity" or that Mr. Crain has a "disability" as those terms are defined in the ADA.  The difference between the parties in this case is whether Mr. Crain is a "*qualified* individual with a disability" and whether Bob Evans failed to make reasonable accommodation to Mr. Crain's disability.

Bob Evans moves for summary judgment on two grounds.  First, it argues that Mr. Crain was not an individual with a disability that was qualified for the positions which he requested at Bob Evans.  Second, it argues that it did not fail to reasonably accommodate Mr. Crain's

3

disability because he cannot show that there were any vacant positions for him, there were no reasonable accommodations that would enable him to perform either of the jobs which he requested, and he accepted the only available reasonable accommodation — the one-year leave of absence — and then did not take advantage of it.

There is little dispute in this case about the relevant facts and no dispute about the applicable law. Mr. Crain worked for Bob Evans in several of its restaurants in Ohio and Indiana for twenty years, beginning in August, 1986. He started as a grill cook and, over time, worked in some of the other five hourly restaurant positions (host, kitchen preparation, busser, server, and dishtank operator). He was accepted to Bob Evans's management-training program and served as an Assistant Manager and Assistant General Manager at some of its restaurants. He was demoted and promoted at various times and was finally demoted back to his original position as grill cook at the Bob Evans Lawrence, Indiana, restaurant. Mr. Crain has, as his deposition testimony demonstrates, an intimate and thorough knowledge of the job descriptions for each of the Bob Evans restaurant staff positions and of Bob Evans's business objectives and management expectations.

Mr. Crain met with Tim Jones, the Bob Evans area director in charge of the Indianapolis stores, in October 2005 to discuss his return to the Lawrence restaurant. At that time, Mr. Crain was in an over-sized, manual wheelchair. Mr. Jones asked him what job or jobs he thought he could do with his disability and what accommodation he might require. (Crain Deposition, pp. 119-20; Jones Deposition, pp. 42 and 49). Mr. Crain answered that he thought that he could do the host or kitchen-preparation position but not all of the functions of either. He said that, as host, he could sit and run the cash register and take names of incoming customers at the podium,

4

but not the other nine functions of the host position. Crain Depo., pp. 120-21, 141; Jones Depo., p. 51. Bob Evans's operations manuals list ten functions of the host/hostess position. Mr. Crain admitted that these ten functions are essential functions of the host position and that proper and efficient completion of each is essential to meeting Bob Evans's operational objectives for its restaurants. Mr. Crain stated that he also could work in the kitchen-preparation position but by preparing and arranging only some of the food items normally prepared in that position and not the other seven functions of the position, such as delivering the items to the server pick-up station, sweeping and mopping floors, and tearing down boxes in the stockroom. Crain Depo., p. 150; Jones Depo., p. 47.

More accurately, Mr. Crain stated in his meeting with Mr. Jones that he could perform neither the host nor the kitchen-preparation position but that he could perform *both* positions in a restructured fashion. Acknowledging that he could not perform all of the functions of either position, he offered to work part of the time at the host position, only when there was another host on duty during peak times who would perform all of the other functions as host that he could not perform, and, during non-peak times, he would move to the kitchen-preparation position when there would be, again, a second kitchen-preparation employee on duty who could perform the functions that he could not perform. (Crain depo., pp. 160 and 209).

Mr. Jones, and the current Lawrence restaurant manager, testified that, generally, Bob Evans restaurants have only one host/hostess and kitchen-preparation employee on duty except during peak-times, when a second employee was added; that the Lawrence restaurant assigns only one host/hostess and kitchen-preparation employee to each shift except during the one peak-time at lunch; that there were not enough peak hours at the Lawrence restaurant to

accommodate another full-time or part-time employee; that each Bob Evans employee was expected to perform all of the functions of his or her position; and that there was no hybridization of jobs at the restaurants, *i.e.*, one employee performing in more than one position.[2]  Mr. Crain did not dispute this testimony.

Mr. Crain's only responses to this evidence and argument has been to attack the sufficiency of the interactive process and to suggest that some of the functions of each position are not essential, as asserted by Bob Evans.  Mr. Crain argues that the Bob Evans interactive process was insufficient because Mr. Jones failed to specifically inquire whether he could perform each essential function of each possible position at the Lawrence restaurant and further failed to physically test him on each function by having him demonstrate his ability on each.  Mr. Crain argues now that he can perform all of the functions of the host and kitchen-preparation position.

Mr. Crain was a twenty-year veteran of the Bob Evans organization with working experience in several of the restaurant positions and several of the restaurants; he had Bob Evans management training; and he had actual Bob Evans restaurant-management experience.  It was entirely reasonable for Mr. Jones to rely on Mr. Crain's representation of which positions he believed that he could work and with which accommodation.  Not only was the in-depth inquiry and physical testing described by Mr. Crain unnecessary and inefficient, but he presented, and we found, no authority to support the proposition that the ADA requires it.  Regardless of what

---

[2] One exception was that, in some restaurants, a busser was occasionally assigned to perform outdoor maintenance and clean-up when that function was not outsourced to an independent contractor.

Mr. Crain believes that he can do now, or even what he believes he could have done then, he does not dispute that, at the time, he described his ability as such that he could perform only part of the host duties and part of the kitchen-preparation position, and each of those only part of the time. It is well-settled that the ADA does not require an employer to shift essential functions to other employees, hybridize jobs, or create new positions in order to accommodate disabled employees. *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997); *Sieberns*, 125 F.3d at 1023. Of the two positions, or one hybridized position, that Mr. Crain desired, there was no reasonable accommodation that would have permitted him to perform them.

In his brief, Mr. Crain suggests that all of the host functions except greeting and seating guests and operating the cash register "must be secondary, if not tertiary, in that they were to be done when the 'real' 'major functions' . . . were either done or at the moment did not need to be done." (Response, p. 10). By this, we assume that he is arguing that they were not truly "essential functions" and redistribution of non-essential functions can be a reasonable accommodation under the ADA. *Ozlowski*, 237 F.3d at 841. This argument derives from Mr. Crain's deposition wherein he was questioned about Bob Evans's job description for the host/hostess job which states that the position has "two major functions . . . Greeting and seating guests. Operating the cash register." But Mr. Crain's assumed equivalence between "essential" and "major" is unreasonable and unsupported. He must present a substantive, not a semantic, basis for determining that a position's function is not essential. The description can also be interpreted as meaning that, while those two functions are the major or most important ones for employees to focus on — for whatever purpose, *e.g.*, customer relations, accuracy, quality — all

7

of the listed functions are essential to the position.  There is no evident, rational basis for assuming that all essential functions must command equal attention, accuracy, or time.  While Mr. Crain gave some testimony that some of the "essential" functions of the host and kitchen-preparation positions were not performed as often or as rigorously as other functions, and that Bob Evans's operational objectives sometimes were not met, he provided no evidence that the functions were not essential to the positions.  The essentiality of a function does not depend solely on whether it is successfully and consistently performed.

Alternatively, regardless of whether Mr. Crain was qualified to perform, with or without reasonable accommodation, the host, kitchen-preparation, or any other position at the Lawrence restaurant, Bob Evans asserted that there was no vacant position for him and Mr. Crain failed to demonstrate that a genuine issue exists regarding this fact.  It is his burden to prove that there was a vacancy, *McCreary*, 132 F.3d at 1165; *Ozlowski*, 237 F.3d at 840, and all he has offered was a sentence in his affidavit stating that, at an unknown date, he saw a help-wanted sign on the Lawrence restaurant door.  A reasonable fact-finder could not find that a position was vacant based on this evidence.[3]

Mr. Crain has failed to show that there is a genuine dispute of material fact and we conclude that Bob Evans is due judgment as a matter of law.  Bob Evans's motion is **GRANTED** and judgment shall issue in its favor.

---

[3] Much of Mr. Crain's argument against Bob Evans's motion involves whether he would have presented a safety risk if he returned to the Lawrence restaurant and there is evidence that Bob Evans represented to him at the time he would be a safety risk if he returned.  However, Bob Evans does not rely on any argument regarding safety in the present motion.

**IT IS SO ORDERED**.

Date: 03/31/2008

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Thomas E. Deer
OGLETREE DEAKINS
thomas.deer@ogletreedeakins.com

Stacia Marie Jones
VORYS SATER SEYMOUR & PEASE, LLP
smjones@vssp.com

Chris J. North
VORYS SATER SEYMOUR & PEASE, LLP
cjnorth@vssp.com

Lawrence M. Reuben
Law Offices of Lawrence M. Reuben
reuben@reubenlaw.net

Amy Suzanne Wilson
LOCKE REYNOLDS, LLP
awilson@locke.com